HAWLEY & KING *v.* W. JAMES and Others. Original Bill.

W. & H. JAMES *v.* HAWLEY & Others. Cross Bill. 16 Wend. 61, 285. In Ch. 5 Paige, 318, 489.

*Trust term to Trustees for Valid and for Void purposes ; Contingent Remainders on a Term for Years determinable on the sooner Termination of the Trust ; Dower of Widow is Equitable Estate ; Perpetuities ; Accumulation ; Vested and Contingent Remainders ; Partial Intestacy.*

THE original bill in this cause was filed in Sept. 1833, by Hawley & King, two of the executors and trustees of William James decease'd, against Augustus James their co-executor and co-trustee, Mrs. James the widow, and the children and grand-children of the testator, and against the other persons who had either vested or contingent interests under his will; for the purpose of settling the construction and carrying into effect the trusts of the will. W. & H. James, two of the heirs at law of the testator and defendants in the original suit, subsequently filed their cross bill against the other parties to that suit, to set aside the will, or such trusts and devises as were illegal, and to have what was not well devised, distributed among the heirs at law and next of kin.

The testator died in Dec. 1832, having made his will about six months before, and leaving real estate valued at $800,000, including 40,000 acres of wild land in Illinois, and personal estate worth about half a million of dollars.

After giving to his wife a life estate in certain real estate and several specific legacies, an annuity of $3000 per annum to her, and a sum of $3000 to be applied by her toward the maintenance, support and advancement of the children of the deceased sister, which he declares to be in lieu and satisfaction of her dower; and after some further legacies and annuities, he declares that he has determined to confide his property to trustees; *" That this trust shall continue and that the final division of my estate shall not take place until the youngest of my children and grand-children living at the*

*date of this my will, and attaining the age of twenty-one years, shall have attained that age."*

The testator at the time of making the will and at his death, had nine children living, one grand-daughter, a child of a deceased daughter, and a grand-son and grand-daughters, children of a deceased son, who were his heirs at law. All the children and grand-children of the testator but three, were minors at the time of his death and at the hearing of the cause. The widow, shortly after the testator's death, by a deed or written instrument, elected to take her dower, instead of the testamentary provision for her.

The testator by his will, then appointed three trustees of his estate, and devised and bequeathed it to them as follows : " I give, devise, and bequeath to them, all my estate real and personal, which I shall be possessed of and entitled to devise and bequeath at the time of my death, and not herein before devised and bequeathed to my wife : IN TRUST, to manage and dispose of the same, and to receive and apply the rents and profits, proceeds, interest, and income thereof, in the manner hereinafter directed and expressed."

He then directs them to collect all debts due to him, and to sell all his " real estate in all places other than the cities of New York and Albany, and the village of Syracuse, as fast as fair prices can be obtained ;" and authorizes them at their discretion to sell or exchange portions of his real estate in those places ; he also empowers them to invest so much of the proceeds of sales, and of all other moneys that should come to their hands, if not wanted to fulfil other purposes of the trust, and to pay debts and legacies, in the purchase of real estate, or in the erection of houses in either of those places, or in loans, annuities, or in any other safe and proper manner; but so that at the ultimate division of his estate, the same should consist chiefly or altogether of real estate."

Powers were also given to the trustees to make provision for the support of the widows and children of his sons then living, if they should die leaving them ; to make certain advances to his sons and grand-sons, who should desire to engage in " any honorable occupation requiring capital ;" also to pay a sum of not more than $3,000 to any of his daughters or his grand-daughters, if they should choose to marry

during the continuance of the trust; all such sums, with compound interest, to be charged against them as debts due to his estate, and deducted from their respective shares on the final division of the residue of his estate."

The testator then made a devise to the children of his son Augustus, in this manner: that the trustees during the continuance and near its termination should purchase real estate worth $50,000, and at the expiration of the trust, convey it to such of the children as the parents or the survivor should direct; that they should also set-off, and convey to two of his grand-daughters, $20,000 worth of real estate.

At the expiration of the trust, he directs that his trustees not interested in the trust with his wife, if she were living and chose to act, should divide the residue of his estate into twelve equal parts, and convey to the persons named as follows: to his four sons and three of his daughters, each one part; to one of his grand-daughters one part; to his grandson R. son of his deceased son, one half of one part; subject to the limitations and "retributive purposes," therein after expressed. The provisions relating to these purposes, were that the trustees were authorized in case "either of his sons, John, Edward, or Howard, or his grand-son Robert, should lead a grossly immoral, idle, or dishonorable life, such delinquent should be considered as having forfeited his share, and the trustees might withhold it, in whole or in part, and the part thus withheld was to be added to the residuary parts."

In the event of the death of any one of them, before or after his own decease, within the trust term, he gives the share of such deceased one to his or her heirs at law, and next of kin, according to the statute of descents and distributions.

The remaining three and a half parts of his estate, he directs his trustees and his wife, if living, "to apportion them according to their discretion among all or any number of those designated by his will as in any event entitled to share in the ultimate disposition of his estate; but with a just regard to circumstances, and a scrupulous attention especially to the personal merits and demerits of each individual."

The testator then provides that the *quantity* of *interest* to

be conveyed to the *cestuis que trust* in pursuance of the fore-going directions shall be, to the grantee for life, with power to devise the same in fee to his or her lineal descendants, in such manner or proportions as he or she may think proper; and in the event of no disposition then in fee to the heirs entitled at law, as if the grantee having derived it from the testator; had died intestate seised in fee; and the convey-ance also to such of his descendants as should be born after his death, to be in fee.

Upon these clauses of the will, various questions arose in regard to the validity of the trust term; as to the election of the widow to take her dower; the marriage portions of the daughters and granddaughter; the accumulation of rents and profits for infants and others; and the remainder of the three and a half twelfths of the estate. The case was argued by no less than nine counsel for different parties.

The Chancellor held, p. 441–489:

I. As to the widow's right of dower, her election, and of what dowable.

1. That the widow of the testator having within two months after his death, executed a deed of relinquish-ment of the provision made for her in the will, in lieu of dower, and elected to take her dower, and pro-cured the deed to be recorded; and having given notice of her election to the trustees and executors, who recognized her right to dower; this was a valid election to take her dower, and equivalent to an actual entry on the land, or the commencement of proceedings for the recovery of her dow-er, within the provisions of the Rev. Stat.* (1 Rev. Stat. 734, 2d Ed. § 14.)

2. That the property bequeathed to the widow did not

---

* § 14. Of estates in dower, "when a woman shall be entitled to an elec-tion under either of the two last sections, she shall be deemed to have elected to take such jointure, devise, or pecuniary provision, unless within one year after the death of her husband, she shall enter on the lands to be assigned to her for her dower, or commence proceedings for the recovery or assignment thereof.

therefore pass under the trust clause in the will, and must be distributed as in case of intestacy.

3. That personal property thus devolving upon the executors is the primary fund for the payment of debts, unless the testator has directed them to be paid out of the rents and profits of his real estate, with the clear intent to exempt the personal for the benefit of those who might be entitled to it under the statute of distributions.

4. That as by the Rev. Stat., the wife is dowable of the descendible equitable estates of her husband, of which he died seised, the widow was in this case entitled to dower in lands, of which her husband was tenant in common with others, and with whom he had joined in a conveyance to a common trustee, for the purpose of disposing of them with more facility ; i. e. that she was entitled to dower in such as had not been sold or contracted to be sold in the lifetime of the husband :   Those contracted to be sold, upon the principle of equitable conversion, to be considered as personal estate, and the purchase money to be distributed as such, to the widow and next of kin.

5. That the annuity of $3,000, given in lieu of dower to the widow, " for her own support and for the education and support of her children," failed by the election of the widow to take her dower, and could not be *apportioned* so as to provide for the education and support of the children out of the same.

II. As to the trusts, their objects, what valid and what illegal ; and of the effect of the illegal trusts to invalidate the estate of the trustee as to the vaild trusts, the Chancellor held :

1. That as the trust term devised to the trustees and executors can not continue a moment longer than is necessary to perform the trusts, but when its legitimate purposes have been accomplished, must lease under the express provisions of the statute, (1 R. S. 724, § 67 ;) that on the other hand, if there were any valid powers in trust contained in this will, that would not have authorized the creation of a trust estate, and which remain unexecuted at the termination of the trust term, they might still be executed as *powers in trust* for the benefit of those interested in the execution.   " Although

some of the objects for which this trust term was created, and some of the contingent remainders and future interests limited thereon may be illegal or invalid, yet if any of these purposes are valid, and will continue during the term, the trust estate must continue in the executors and trustees for the same period." (p. 458.) "Such of the trusts of the will, therefore, as would have the effect, if valid, to render the estate inalienable for a longer period than allowed by the statute ; and every remainder limited upon the trust term, which would have that effect, must be considered as absolutely void and inoperative in determining the validity of the trust term, and of the other trusts of the will. So far as the ascertained intent of the testator is consistent with the rules of law, the invalidity of any particular trust, interest or limitation, can not destroy those which are valid ; unless they are so mixed up, that it is impossible to sustain the one without giving effect to the other." (p. 459.)

2. The Chancellor held that to render a trust term valid, it need not be absolutely dependent upon the lives of persons in being and determinable at or before the death of two such persons : that although such a trust term might be inalienable, under the 63d and 65th sections of the statute of trusts, (the first forbidding the *cestuis que trust,* and the second the trustee, to convey their respective interests,) it could in no event suspend the power of alienation for a longer term than twenty-one years, and the usual period of gestation, if there was a posthumous child. But no contingent remainder can be limited upon such a term, unless the nature of the contingency upon which it is to vest, is such that the remainder must vest in interest, if ever, during the continuance of not more than two lives in being at the death of the testator, or at the termination of such lives.

3. As to the estate devised to the trustees ; he held that it was a term of years in the testator's real property of which he died seised, and in that into which he directed the personalty to be converted, for the term of twenty years and ten days ; the youngest grand-child living at the date of the will being one year old, ten days after the testator's death. "In ordinary cases of a trust for the payment of debts and legacies, or other charges upon the estate, to con-

64

tinue until a grand-child shall arrive at the age of twenty-one, the trust estate will not be determined by the death of the child or grand-child under age ; but will continue until the time when he would have arrived at that age if he had lived. (*Sweet* v. *Beal*, Godolph. 388 ; *Boraston's case*, 3 Coke, 21 ; 3 P. Wms. 177 ; *Stanley* v. *Stanley*, 16 Ves. Rep. 506.) But in this case it is evident, that the testator contemplated the possibility that his youngest children or grand-children might die under age ; and that he intended that the trust estate should cease whenever their minorities should terminate, either by death or lapse of time. The trust estate will cease at the death of the last who shall die *under age, after the survivors have all attained their majority.* It is, therefore, not an estate for years determinable on lives, nor an absolute term: but it is an estate for twenty years and ten days, determinable sooner if the minorities shall cease before its expiration. And vested remainders, which are limited upon the trust term, except so far as they are to be composed of illegal accumulations directed during the term, are valid ; whether such remainders are in fee or life only."—(pp. 462-3.)

4. As to the limitation and vesting of contingent remainders upon a term of years ; under the 20th and 21st sections of the statute of trusts :* " The fair construction of these two sections taken together," says the Chancellor, " is, that a contingent remainder upon a term of years must be so limited that it will necessarily vest in interest within the period required by the 20th section, if it ever becomes thus vested : and that a contingent remainder for life, to a person not in being, shall not be limited on a term of years, although so limited that it will become vested within that period if

---

\* *Section* 20. A contingent remainder shall not be created on a term of years, unless the nature of the contingency on which it is limited be such that the remainder must vest in interest during the continuance of not more than two lives in *being* at the creation of such remainder, or at the termination thereof.

*Section* 21. No estate for life shall be limited as a remainder on a term of years, except to a person in being at the creation of such estate. (1 R. S. 719 ; 2d. Ed.)

ever. Neither does this 20th section render it absolutely necessary, that the term of years on which a contingent remainder is limited, should be made determinable upon lives. It may be limited upon a term in gross, if the remainder itself is so limited that it must necessarily become vested in interest if ever, during, or at the expiration of not more than two specified or ascertained lives in being at the creation of the remainder."—(pp. 463-4.)

Upon these principles the Chancellor held—that the remainders for life to the seven children and two grand-children, in their several shares were valid as contingent remainders limited on a term of years; and that if such remainders became vested in interest in themselves, upon the termination of the trust term, the ultimate remainders in fee to their descendants, respectively, were also valid, as they must vest in interest, if ever, at the termination of one life in being at the death of the testator. But he held, on the other hand, that the substituted contingent remainders, in the shares of such children or grand-children as might die during the trust term, were not limited so as to vest in interest necessarily during the continuance, or at the termination of any two lives in being at the death of the testator, and were therefore void; as was also the power given to the grantees for life to devise in fee to descendants not in being at the time of their respective deaths, or to appoint other than estates in fee.

As to the remainders for life to the children and grand-children, whether vested or contingent, the Chancellor held, that those whose shares and legacies were given to them out of the rents and profits during the term, and to vest in possession by the determination of the trust estate merely, became vested in them on the determination of one life in being, and the contingent remainders to their descendants in fee were valid. But as to those shares of which the final disposition is to depend upon the decision of the trustees, as to moral character and merit, and can only take effect by the execution of the trust power or fail; those remainders must continue contingent so far as relates to any interest in the eight and a half shares, until the termination of the trust estate; and the remainders to their heirs and represen-

tatives, were void. As to the three and a half shares re-
maining, which were by the terms of the will—" to be ap-
portioned by the trustees according to their discretion,
among all, or any number of those designated by his will
as in any event entitled to share in the ultimate disposition
of his estate; but with a just regard to circumstances, and
especially to the *personal merits* and *demerits* of each in-
dividual"—the Chancellor held, that the nature of the contin-
gencies on which they were limited were not such that any
estate or right in such residuary fund would necessarily
vest in interest within the period of two lives in being at the
creation of the remainder, or at their termination, and that
devise was therefore void; and he doubted whether it was
not also void on account of the uncertainty as to what per-
sons the testator intended to be beneficially interested in
this residuary fund from his description of the class.

6. The $50,000 legacy to the children of Augustus, he
held to be already vested; subject to be devested by death,
or the power of appointment by the parents.

III. As to the accumulation of rents and profits, or the
payment of debts out of them—the Chancellor held,

1. That as the personal representatives of a testator or
intestate, had one year by the statute to get in the assets and
to pay off the debts;.the interest or income of the estate for
that year may be applied in the payment of debts under a
direction contained in the will, and in exoneration of the
principal, without violating the statutory provisions against
accumulations.*

---

* 1 Rev. Statutes, p. 720 ; 2d Ed. *Section* 37. An accumulation of rents
and profits of real estate for the benefit of one or more persons, may be di-
rected by any will or deed, sufficient to pass real estate, as follows :

1. If such accumulation be directed to commence on the creation of the
estate out of which the rents and profits are to arise, it must be made for the
benefit of one or more minors then in being and terminate at the expiration of
their minority:

2. If such accumulation be directed to commence at any time subsequent
to the creation of the estate out of which the rents and profits are to arise, it
shall commence within the time in this article permitted for the vesting of
future estates, and during the minority of the persons for whose benefit it is
directed, and shall terminate at the expiration of such minority.

By *Section* 38, a direction for accumulation " beyond such period is void
as to the excess of time beyond the minority ; and all others are void."

2. But as in this will, the testator intended that there should be an accumulation of the rents and profits during the trust term, after which the whole trust estate is to be partitioned, with the accumulations, among the objects of the trust, such accumulation the Chancellor holds, is clearly illegal under the Revised Statutes.—(p. 481.)

3. But as the direction for the illegal accumulation, and that only, is made void by statute, the devise of the residue of the estate, will not be affected by it, if the devise of the original estate can be separated therefrom.

4. As to the direction to the trustees to add the amount of the advances made to children and grand-children out of the rents and profits, with compound interest thereon, to their respective shares at the termination of the trust, for the sole purpose of increasing the original shares of those to whom no such advance or a less one is made; it is an indirect mode, says the Chancellor, of accumulating the rents and profits at compound interest for the benefit of those who are to take estates therein, and is therefore clearly void.—(p. 482.)

IV. As to the rents and profits, and income of the estate, not legally and effectually disposed of by the will.—(p. 483.)

1. By the 40th section of the Revised Statutes relative to the creation and division of estates, (1 R. S. 721; 2d Ed.) surplus rents and profits accruing during the suspense of the power of alienation or of the ownership, when no valid direction for their accumulation is given, belong to the persons presumptively entitled to the next eventual estate; and the persons presumptively entitled to the next eventual estates in this case in the eight and a half twelfths of the trust estate, are the seven children and two grand-children. They are therefore entitled to the rents and profits accruing from that part of the estate.

2. As the direction to convert the three and a half twelfths of the personal estate must wholly fail, in consequence of the illegality of that part of the trust, it remains *personal property;* and with the interest thereon, after payment of debts, may be distributed immediately to the widow and next of kin.

The Chancellor held, that the executors were right in

filing their bill for the direction of the court, and that the cross bill was also proper ; and the costs of all parties were ordered to be paid out of the personal property as to which he died intestate.

From the decree of the Chancellor, two of the trustees, viz : Hawley and King, appealed to the Court of Errors. There were also various cross appeals entered, which were all discussed in the same argument, by the counsel for the respective appellants. Opinions were delivered upon the final decision of the cause by Nelson, Ch. J., Bronson and Cowen, Js., and Senators Mack and Maison.

On the principal questions presented to the court on this appeal, they all concurred for reversing the Chancellor's decree, as to the validity of the trust term, and of the remainders limited upon the trust term, with the exception of Mr. Justice Cowen, who was " for affirming the Chancellor's decree throughout."

Nelson, Ch. J., held, (p. 113–144 :)

I. As to the object of the trust term, or purposes for which it was created ; and whether authorized by law.

1. That the trusts to pay legacies and portions, and to make the advances to the sons and grandsons, were in the nature of legacies and properly classed with them, and were authorized by law, if created in conformity to the statute, so as to sustain the estate in the trustees.

2. The trusts to educate and support the minor children, in the event of the death of Mrs. James, and to support the widows of sons, and educate and support children of deceased sons and daughters, and to pay annuities, were valid. Also,

3. The trust to accumulate the rents and profits not wanted for the purposes of the will, if within the statute limits and purposes. " All the others," he says, " are future, and most of them are contingent, and may never arise. The trust to pay debts I have not noticed, because it is an unlawful one ; no such trust is authorized except to sell lands. (p. 116.) Where a future trust is created, to take effect at a future day, until it takes effect, no trust exists, and no estate

is vested in consequence of such a trust, in the trustees, until the trust comes into existence.

As to the trusts,

1st. To pay legacies he holds it valid, but the trust estate would cease as to them, the moment they were paid.

2nd. As to the annuities, he holds that the trust to pay them out of the rents and profits is a valid trust, if otherwise unobjectionable, and then may sustain the legal estate in the trustees; but that it is an inalienable estate.

II. As to the duration of the trust term, whether properly limited under the statutes, he held that, (p. 120 :)

1. The trust estate or term depended upon lives, upon minorities, and upon both combined; that, if in either aspect the limitation of the estate might suspend the power of alienation beyond the time allowed by the law, then it is not valid, upon the well established principle, that a limitation which may *by possibility* create such a suspension, is void.

"If the limitation be not such that it must take effect, if at all, within the prescribed period, it is void. It is not enough that the estate, at the death of the testator, is alienable; it must be made so by the will, and not by the result of chance. In this case, the trust term is a present vested estate, and inalienable during the whole period of its limitation. The trustees can not convey; and the annuitants, for whose benefit alone, in my view, the trust exists, can not convey by reason of the 63d section. There exists, therefore, a complete suspension of ownership during the term. And even if their interest be unaffected by that, still in my judgment, the trust term would be inalienable. The trustees being unable to alien under the 65th section, the estate must remain in them during the trust. The trust term, then, I consider inalienable, both as it respects the estate of the trustees, and the interest of the annuitants. (p. 123.)

2. The question then fairly arises, and must be decided whether its limitation is within the prescribed period of the statutes, prohibiting perpetuities."

And the Chief Justice argues that if the trust term be considered an estate for 13 lives in its creation, then it is clearly void. If an estate only during minorities, and it could be certain that the minorities would cease by lapse of

time, before the termination of the lives, then it would be an estate depending upon minorities, and not upon lives; but as it may terminate upon the death of all the thirteen before any one attains majority, it is clear that in that view, it is an estate depending upon 13 lives, and may terminate with them." (pp. 124–125.)

3. If the trust term be considered as an absolute term of 20 years and 10 days, determinable by the ceasing of the minorities, it is in no respect different from such a limitation determinable upon lives, as to its possible duration. In either view, it may continue the whole of the period limited—the 20 years and 10 days. We have now this limitation, and during the lives of two persons in being. Suppose these lives should drop at the end of ten years, is not the authority of the statute to suspend the ownership exhausted? p. 125.

4. "Again; an estate to A., for the lives of B. and C., or 21 years; which of these two limitations shall control according to statute, the two lives or the 21 years? The case as presented upon this will, is an estate to the trustees to hold in trust for 20 years and 10 days, determinable upon the ceasing of the minorities of the 13 infant children and grandchildren, then over to the remainder-men. At the end of 10 years, two of the 13 lives fall in. Have not two lives in being at the creation of the estate upon which, with eleven others, the limitation of it depended, already expired? Two specified lives; and yet half the trust term remains, and may continue ten years longer. It seems impossible to avoid or explain away the repugnance between the limitation of the term and the rule of the statute." (p. 126.)

III. Whether the limitation of estates, with a view to suspend the power of alienation, must be upon *one or two specified lives*, within the true construction of § 15th, or may be departed from? (p. 127.)

1. "The position of the court below, says the Chief Justice, is that the 15th section does not require that the trust term authorized by § 55th, should be limited upon two *specified lives*, and that the common law rule upon this subject has not been abolished. But where a positive rule of real property is enacted, therein modifying or contradicting a

former one, the latter is plainly abrogated and the rule of the statute, the only one in force. Both can not exist." *" Present estates* then, as they existed before the Rev. Stat., are the only estates that are not abolished. They were extensively altered and modified: but may be said to exist still at common law subject to those modifications.

2. The Chief Justice however insists, that but one rule was intended to be prescribed for both, and should be held so, particularly since it had already been decided in the case of Lorillard's will, that § 15 applied equally to both.

After discussing this question at length, the Chief Justice says, (p. 133 :)

"From the foregoing view of the questions involved in the trust term, I have arrived at the following results, which it may be proper now to bring within more condensed limits."

I. That the trust to pay annuities is a valid trust within the 3d clause of § 55th, and may sustain in the trustees the devise of the legal estate during the term, under the 60th section of the statute.

II. That all the other trusts are either invalid or are so limited that they cannot sustain it for that period of time : they are future or contingent, or they are immediately executed and cease.

III. That the estate thus vested in the trustees is inalienable during the existence of the trust term: 1. By the operation of the 63d and 65th sections, it being a trust within the 55th section : 2. Assuming the trust to be within the 2d subdivision, the term is equally inalienable ; and,

IV. That the trust term is void,

1. Because it is an estate limited to depend upon 13 lives, as well as upon minorities, and may postpone the power of alienation for a longer period than is allowed by law ; § 15th.

2. That if it should be considered properly a term for 20 years and 10 days, determinable upon 13 minorities, it is still void, because the power of alienation may be suspended for more than two of the 13 lives upon which it depends ; and,

3. Because the trust term is not limited to depend upon

65

one or two specified lives in being; the only measure for the suspension of the power of alienation, since the adoption of the Revised Statutes, being a life or lives." (pp. 133, 4.)

V. " What then becomes of the remainders? (p. 134.)

1. They cannot vest in possession, under the will, because that expressly limits them, upon the ceasing of the 13 minorities. The limitation being illegal, and the trust term void, the estate does not remain in the hands of the trustees, but must descend to the heirs at law, who are immediately vested in possession, and entitled to the rents and profits."

2. Whether the remainders are valid, *so as to divest the heirs of the estate*, on the execution of the power by the trustees in pursuance of the claims of the will, providing for the distribution of the residue and the quantity of interest to each? The period during which the absolute power of alienation may be suspended by *means of a power*, is no longer than is authorized by means of a trust, or by any limitation or condition whatever. The suspension of ownership, therefore, by this power, the Ch. J. holds as objectionable as the trust term, and must be declared void.

VI. Whether these remainders are alienable, before the execution of the power of distribution by the trustees?

1. There are three descriptions of them, all going to different persons, upon the happening of different events, viz., *first*, the remainders *for life*, with power to devise; these are the *first* estates in remainder, and are limited to the seven children and the two grand children: *secondly*, the remainders to the descendants of those dying before the expiration of the trust term: and *thirdly*, the estates of those in remainder who may be devisees of those empowered to devise. All these the Ch. J. holds to be void from their creation, as coming within the same rule of inalienability, within the period of the statute.

VII. Whether the life estates being held vested, and all the remainder conceded to be contingent and void, these life estates should be executed in possession?

1. The Ch. J. holds, that under the power of the trustees to allot and convey these estates, at the termination of the trust estate, the ownership, as before shown by him, was

inalienable until the execution of the power, and therefore as objectionable in their limitation as the trust term itself. But, he says, (p. 140,)

2. " There are objections equally conclusive : the trust term is void and góne ; the substituted remainders are alśo void and gone : these life estates are the only ones that can be sustained under any view." He then urges, that to pre- serve the life estates merely, as vested, and to leave the pro- perty to descend, as that of the testator to the testator's heirs would palpably defeat the intent of the testator. " So much of the will is broken up as illegal, and these facts are so connected with these life estates if deemed valid, that it is impossible to separate them without disregarding the direc- tions of the testator. The entire estate must therefore de- scend to the heirs at law, and they cannot subsequently be divested on the execution of the power by the trustees." (p. 141.)

VIII. As to the effect of this conclusion upon the annui- ties, legacies and portions, and the shape of the final decree ?

1. As to those heirs to whom beneficial interests have been given under the will, in the shape of legacies or annu- ities, which are valid, they must be put to their election. They cannot be permitted to take under, and also in hostil- ity to the will, unless such is the clear intent of the testator. *Noyes* v. *Mordaunt*, 2 Vern. 581, and other authorities, are cited by the Ch. J. ; and they, as well as many more that might have been cited, fully sustain this position. (pp. 143, 4.)

Mr. Justice Bronson, in an opinion characteristic as to its ability and reasoning, and as to some notions upon the sta- tute of trusts to which we may hereafter advert, arrives at conclusions in most respects in accordance with the Chief Justice. But in one or two essential particulars he dissents from his conclusions. That is, (p. 144—182,)

I. " Whether the trust is valid in relation to the objects or purposes for which it was created ?

1. The trust to receive the rents and profits of lands to pay the debts, he held to be void.

2. That the trust to receive rents and profits, and " pay them over," is void ; the statute only authorizes a trust to re-

ceive rents and profits, and " apply them to the use" of any person.   The trustee must himself make the application.

3. That an estate where alienation is suspended, may be limited in some event besides life ; but life must in some form enter into the limitation, so that the power of alienation can in no event be suspended beyond two designated lives.   *No absolute term, however short, can be maintained.*

4. If a testator attempt to create a trust for any of the purposes specified in the 55th section, which is not valid as an *express trust,* it cannot be carried into effect as a *power in trust :* and if the power of alienation may be suspended in trust under a power in trust, for a period longer than that allowed by law, the trust is void.   Decree reversed.

The decree entered in the cause, in the Court of Errors, is given at length in the report of this case, (14 Wend. 274, 5, 6, 7, 8, 9, 280, 1, 2, 3, 4 and 5,) and is in conformity to the principles of the opinion of Nelson, C. J. The first clause of the decree declares the *trust term* void, as " suspending the power of alienation of an absolute fee in possession for more than two lives in being, and without reference to any designated life, or any two designated lives." The question raised by Savage, Ch. J. in the *Lorillard Will* case, and again presented by Bronson, J., in the present, as to the validity of a trust " to receive rents and profits, and pay over"—instead of " to apply to the use of"—was not passed upon by the court in this case, and must be still considered a vexed question.

The court expressly declares that " the decree was not to be deemed a decision upon the title of the trustees to the lands of the testator in the state of Illinois or elsewhere out of this state or their power over them ; but upon the cause being remitted to the Court of Chancery, or upon any amended or further bill in that court, that court should proceed and make such order and decree in relation to such lands as may be legal without prejudice to any party in consequence of this decree, and notwithstanding that the provision for any such party in the will may by this decree be declared to be void."

In August, 1838, an application was made to the Chancellor for further directions pursuant to the above provision in the decree. (*Hawley* v. *James,* 7 Paige, 213.)

By the report of a master, it appeared that the will was duly executed to pass real estate according to the laws of Illinois in force at the testator's death; and that the widow was entitled to dower in such lands by the laws of that state. It also appeared by the report that the legislature of Illinois had adopted or recognized as in force in the state, the English common law and all acts of parliament of a general nature in aid of the same as they existed prior to the 4th of James I., with two or three specified exceptions; and that there was no statute in that state, inhibiting or modifying trust estates, as authorized by the common law.

The Chancellor held that, as the testator had devised the legal estate to the trustees, *in trust* to sell and invest the proceeds in lands in *this state* upon trusts which were illegal and void by our laws, the object for which the conversion of real estate into personal had failed; and as the proceeds were not legally disposed of by the testator, there was a resulting trust in favor of the heirs at law *pro tanto.* In other words, there is no equitable conversion of the property in such a case, and it is in equity still considered as real estate and descends to the heirs of the testator.

The conclusion at which I have arrived is, that the legal title to the lands in Illinois, subject to the widow's right of dower, is now in the trustees under the will, according to the laws of Illinois, but that the whole equitable interest therein is in the heirs at law of the testator, as a resulting trust.

The trustees were accordingly directed to convey to the heirs by a conveyance executed to pass the legal title according to the laws of Illinois.